CONSOLIDATED STORE–SERVICE CO. v. SEYBOLD et al.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1901.)

No. 704.

PATENTS—INFRINGEMENT—CASH CARRIERS.

The Osgood patent, No. 357,851, for an improvement in store service apparatus, which describes in claim 1 a cash carrier consisting of a box having rigidly attached hangers by means of which it is suspended from grooved pulleys traveling one behind the other on a tautly-stretched horizontal wire, the purpose of such construction being to prevent oscillation of the car in the direction of the way so as to enable it to be impelled from one end of the way to the other by a single push or impulse, is limited to the precise means shown for preventing such oscillation, and is not infringed by a carrier which employs a different mechanism to accomplish the same purpose.

Appeal from the Circuit Court of the United States for the District of Indiana.

See 100 Fed. 299.

In the suit below the appellant alleged infringement of Letters Patent No. 357,851, granted to Edwin P. Osgood February 15, 1887, for a new and useful improvement in store service apparatus. The application for the above Letters Patent was filed June 7, 1883.

The drawing and specifications of the patent in suit are as follows:

"My invention is an improved cash-car apparatus or system for sales rooms and the like. Heretofore and prior to my invention a cash-carrier has been devised consisting of an elevated wireway with a car mounted on wheels adapted to run upon the way, and provided with an endless cord attached to the car and running over driving-wheels at each end of the way, with means for working the wheels and cord, and thus drawing the car back and forth.

Such a cash-carrier is shown in the United States patent to Brown, No. 165,-473, granted in 1875.

"Also prior to my invention I am aware that loads have been supported on hooks carried on trucks which ran on an elevated way, and were moved by pushing. In such cases, so far as I am aware, the load or the receptacle containing the load was, when moving on the way, attached loosely to the wheel or wheels, so that a push or single impulse would cause the load to swing or oscillate in line with its movement, and this swinging or oscillation, though not greatly objectionable with heavy loads, or when the load was pushed all the way by a continuous or prolonged pushing, is not practicable where a light load is required to be sent by a single impulse from one end of a line of considerable length to the other.

"I have found by practical use that a freely-moving car adapted to be thrown by the single impulse of a push from one end of a store to the other, or from the salesman's stand to the cashier's desk, usually a hundred feet and more, is practical, rapid, does not disfigure the store, and does not get out of repair in use. There are no pulleys to provide, put up, or keep in repair, or to disfigure the store; no cord to stretch or break or rattle of machinery; but to adapt the free movement of a car or carrier to this special service, where the car (which with its load is light) must go the entire length of the way on the momentum of its original single impulse or push, and where the sender cannot in practice follow it, all rocking or oscillating movement in the line of the impulse must be eliminated. To effect this I have provided for the car two wheels in line with each other and mounted in a suitable frame. This prevents any rocking of the frame longitudinally on the wire or in line with the impulse, and any slight lateral oscillation is not injurious. Further, the car (or that part on which the hand is placed in impelling the car), when impelled, must be rigid with the wheel-frame on which it is supported in the direction of the length of the car or line of movement. If it be attached by a hook, even if there be a two-wheel frame on the car, the load, when started by an impulse of the hand in line with the wire or track, will oscillate in that line, and interferes with the progress of the frame as seriously as if the frame oscillated on one heel. I therefore attach the car to the frame so that when impelled it will be rigid in the direction of its movement, and when pushed with its load will move as one solid body. As the car is required to go back and forth between the salesman and cashier it is manifest that the wire must be practicably horizontal.

"When placed in a store, a cash-car apparatus constructed according to the conditions hereinbefore explained, and substantially as hereinafter explained, may be put up by simply stretching the wire from one end of the store to the other as taut as practicable and without intermediate supports. When so stretched it is scarcely observable, and nothing more is required than to place the car thereon, the car being previously fitted for the purpose, and the store is not obstructed by workmen. The wire fitted to sustain the necessary tension will support the car indefinitely without appreciable wear or liability to disarrangement.

"Manifestly the wire and its car may be duplicated or multiplied according to the requirements of the store.

"Having thus given a general statement of the conditions and limitations of my invention, I proceed to describe it in detail and with reference to the accompanying drawings, in which—

"Figure 1 shows a plan view of the wires stretched from convenient points in the store and converging to the practical common point at the cashier's desk. Fig. 2 is a side elevation of the car. Fig. 3 shows a section of the car on line, x x, of Fig. 2.

"In the drawings, a represents the horizontal wires connected to a fixed support at each end. They are shown as converging from these fixed supports in different parts of the store to the cashier's desk (indicated at E), where they are attached to a common bar, A. The bar and other supports must be of sufficient strength to allow the wires to be put under tension, so that they may be held practically horizontal throughout, and so that a car impelled by a push applied by the hand of the operator may pass, by its own momentum, from one end to the other, in either direction. As shown, the ends of the wires are threaded and are strained by means of nuts, c. The wires shown

are all alike, and each has its appropriate car, so that a detailed description of one answers for all.

. "The car shown consists of a box, B, which may be of any suitable shape or size under the limitations herein explained. It is suspended beneath the wire on wheels, d d, running on the wire one behind the other, by means of hangers, e e, which form a frame for the wheels. The two wheels, one behind the other, prevent any longitudinal oscillation on the axle, to which one wheel would render it liable, and the box or car, being fixed to the hangers, cannot be made to oscillate longitudinally thereon, and moves, with its load, as one rigid body. It is therefore adapted to be impelled from one end of the way to the other in either direction simply by an original impulse given at the start and the untrammeled momentum thereby acquired, and a single impulse being once given the car moves certainly to its destination without further attention from the operator.

"A buffer of india-rubber or some equivalent elastic material is placed axially upon the wire at or near the end, in order to arrest it without too severe a shock. I prefer to make this stop adjustable by means of a set screw or other suitable means, whereby it may be set in any desired position.

"The wires may be stretched out in an obvious manner, and throughout the store are free from intermediate supports."

The specifications and claims of appellant's original application for Letters Patent, June 7, 1883, were extremely broad, the claims being as follows:

"1. In a cash carrier system for sale rooms, wires stretched horizontally from suitable point or points in the store center or at any point forming suspended ways upon which cars are mounted by means of wheels. .

. "2. In a cash carrier system, a number of wires extending horizontally, from suitable supports to a supporting device at or near the cashier's desk, substantially as set forth.

"3. The cash carrier system consisting of the horizontal way for each car or carrier mounted upon the ways."

Subsequently, January 30, 1885, these claims were amended to read as follows:

"1. An elevated wire way extending from a point over the salesman's counter to the cashier's desk in combination with a freely moving car mounted upon wheels on the wire way and adapted to be impelled from one end to the other in either direction by an impulse which may be imparted to it by the hand of the cashier or salesman.

"2. A series of elevated wire ways extending from the various salesmen's counters and converging to the cashier's desk, combined with a freely moving car mounted upon wheels upon each of said ways, the said cars being adapted to be impelled from one end to the other of the ways in either direction by impulses of the hand imparted by the cashier or salesmen.

"3. An elevated wire way extending from a point over the salesman's counter to the cashier's desk, a freely moving car mounted upon wheels thereon and adapted to be impelled from one end to the other in either direction by an impulse of the hand imparted by the cashier or salesman, combined with buffers secured to the way at each end thereof, substantially as described."

Owing to interference proceedings, the claims, as amended January 30, 1885, were further amended and restricted, April 28, 1885, as follows:

"In the first claim insert after 'by' and before 'the cashier'—'of the hand of.'

"In the 2″ claim after 'impulses'—'of the hand.'

. "Amend the 3″ claim by inserting 'of the hand' after 'impulses.'"

Letters Patent No. 312,752 issued to appellant, February 25, 1885, were canceled and withdrawn, January 4, 1887, when appellant submitted an amended specification, the claims reading as follows:

"1. In a cash car apparatus, a wire stretched horizontally between fixed supports at each end, and in the described relation to the cashier's desk, in combination with a freely moving car, having wheels fitted to run on a wire, one behind the other, said car being connected to a frame in which the wheels are journaled, and held rigidly against oscillation longitudinally of the way, when the car is moved, the whole moving structure being adapted to be impelled as a solid body from one end of the way to the other, in either direction, by the momentum imparted by a single impulse or push; substantially as described. .

"2. In a cash car apparatus, a wire stretched horizontally between fixed supports at each end, and having an adjustable stop placed axially on said wire, in combination with a freely moving car, having wheels, one behind the other, said car being connected to a frame, the whole moving structure being adapted to be impelled from one end of the way to the other, by the momentum imparted by a single impulse or push; substantially as described."

January 11, 1887, in accordance with the Examiner's suggestions, further amendments and restrictions were made by appellant in the application of January 4, 1887, as follows:

"On page 4, lines 6 and 7, erase 'which with the box.'

"Claim 1, line 3, erase 'having wheels' through 'when the car is moved,' line 6, and insert:—'consisting of a receptacle below the wire connected with wheels fitted to run one behind the other on the wire, whereby the car is held rigidly against oscillation longitudinally of the way.'

"Claim 2, line 3, erase 'having' and all of line 4 and insert:—'consisting of a receptacle below the wire connected with wheels fitted to run one behind the other on the wire, the.'"

January 13, 1887, the Examiner demanded a still further amendment, which was conceded by appellant, the following day. Letters Patent No. 357,851— those in suit —were then granted, February 15, 1887, in accordance with the last above amendment and restriction.

The first claim of the above patent is the only one alleged to be infringed, and is as follows:

1. "In a cash-car apparatus, a wire stretched horizontally between fixed supports at each end and in the described relation to the cashier's desk, in combination with a freely moving car held below the wire on wheel-hangers, to which it is rigidly connected, the wheels thereof being fitted to run one behind the other on the wire, whereby the car is held rigidly against oscillation longitudinally of the way, the whole moving structure being thus adapted to be impelled as a solid body from one end of the way to the other in either direction by the momentum imparted by a single impulse or push, substantially as described."

The appellee's apparatus is clearly shown in the following drawing:

The above apparatus consists of a track, or horizontally stretched wire, running from the cashier's desk to the sales counter, on which track a car is suspended upon a single wheel, near the middle of the car, and above the wire. The car-body is attached to a long frame suspended beneath, and parallel to the wire. This attachment is at a point some distance from the bearing of the wheel upon the wire, and at the opposite end is placed another wheel, which is journaled in the frame below the wire. The car-body, being attached to the short end of the frame, has a constant tendency, when weighted with merchandise, to overbalance the long end of the lever, and thus causes the wheel at the long end of the frame, and under the wire, to press against the wire, at its under side, which, in turn, is made to assume a slightly inclined position.

The appellees urged upon the court below many illustrations of the prior art, introducing nineteen patents in evidence. The court below, after stating succinctly and correctly the ·state of the art prior to the Osgood device, adopted the Brown patent, No. 165,473, as the one most nearly related to the claim of the patent in suit.

The specifications and drawing of the Brown patent, above referred to, are as follows:

"My invention consists in constructing and placing two standards, one at each place, between which transmission of goods, &c., is desired. At or near the top, and on one side of these standards, guards are placed, from the top of which a wire rail is suspended from one standard to the other. On this wire rail, D, I suspend a carriage which, by aid of wheels, allows it to be moved back and forth over the same. This movement is effected by an endless rope, which passes over grooved pulleys, placed within the fore-mentioned guards and passing through an aperture in the top of the carriage, and also placed in a groove in the bottom of the same, thus steadying the movements of the carriage.

"These pulleys are rotated by aid of ropes or cords passing over and around their axles. Thus when the carriage is moved in one direction one of the said ropes is wound up around one of the axles, the other being pulled down, and vice versa when the carriage is moved in the opposite direction. The carriage is provided with drawers or suitable compartments for the reception of the articles to be transmitted. To the top of the standards bells or similar annunciators are placed, which indicate the arrival of the carriage.

"In order to describe my invention more fully, I refer to the accompanying drawing, forming a part of this specification and representing a side view of my improved apparatus for transmission of goods, &c. A A, are the standards; C C, the guards, fastened to one of the upper sides of the standards. D is the wire fastened to the top of the guards, C C. E is the carriage, with drawers, f f, aperture, g, at the top, and groove, h, at the bottom. I I, are the wheels secured to the top of the carriage and supporting the same upon the wire rail, D. J is the endless rope, passing around the grooved pulleys, K K, which are supported on the axles, L L, around which the ropes, m m, are wound. N N, are the bells or enunciators, placed on the top of the stand-

ards, A A. Where a limited place does not admit of employing the ropes, m m, for rotating the pulleys, a crank may be employed and placed on the ends of the pulley-axles in order to accomplish the same result."

Although not convinced that the prior art contained an anticipation to Osgood's device, the court below was of the opinion that the Osgood patent made such a small advance over the prior art, that it ought to receive a strict and narrow construction—an interpretation no broader than its terms convey—and dismissed the bill for want of equity.

F. P. Fish, for appellant.

David H. Fletcher, for appellees.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

After stating the facts in the case as above, GROSSCUP, Circuit Judge, delivered the opinion of the court, as follows:

The object of the invention described in the patent in suit is to substitute for cash boys and girls formerly employed in retail stores a simple, efficient, and reliable apparatus, by which cash or small parcels can be conveyed from the sales station to the cashier's desk, and the change returned to the sales station.

It is not claimed that, in the promotion of the general purpose, the patent is, in any sense, a primary one. It is admitted that the general object in view had been previously realized, and that the patentee came into the art, not as a creator, but as an improver. The claim is that his system excels all its predecessors for cheapness, simplicity and efficiency. These constitute the scope of the appellant's improvement.

But these are results simply. It is somewhat difficult to point out, in the appellant's apparatus, the mechanical means leading to these results. They may, however, with sufficient accuracy, be summarized as follows: (a) The use of a slender wire, instead of a metal rail, or a wire rail; (b) the use of straining nuts, placed at each end of the wire, so that the wire may be tightened, from time to time, to keep it stretched perfectly taut; (c) the attachment of the car to the wire, so rigidly that oscillation, in the line with the car's movement, will be prevented, resulting in the car's being propelled from end to end by a single impulse.

It is plain to us that the employment of the two features first named, either singly or together, cannot be treated as importing novelty into the appellant's patent. The use of nuts to stretch the wire is not mentioned, either in the claims or the specifications; and the proceedings in the Patent Office, in connection with the formulation of the claims, exclude the inventor's selection of wire, as distinguished from some other form of rail, from being considered as a novel feature of the claims of the patent. The inventor first claimed broadly, "wires stretched horizontally from a suitable point or points in the store center, forming suspended ways upon which cars are mounted by means of wheels"; but this claim, as we have seen, went out before the patent was allowed. The only reference to wire in the claim allowed is in combination with a freely moving car. This, we think, eliminates the selection of a slender wire—as distinguished from a rail or wire rail—from a place, as an independent factor, in the grant to appellant. It may be that

wire, as a track, was not in use in that· art formerly, and that its selection by the patentee was in the nature of a meritorious discovery; but courts will not, in the absence of an inclusive claim, go into the history of the art, to ascertain what was really discovered, and what might have been patented, had the patentee chosen. The patentee will be taken at his word, and protected only according to the terms in which he has himself demanded protection.

The real invention, then, if any, embodied in the patent under discussion is in the attachment of the car to a wire so rigidly, that oscillation is prevented. It is this conception—possibly new—in combination with the old parts of the apparatus, that gives to the claim its validity, if it have any.

It may be assumed that the patentee discovered that the hindrance to the easy propulsion of a car long distances on a wire, by a single impulse, was in the oscillatory movement of the car, where it hung loosely on the wire; but this discovery, however important, is not, as a discovery, included in the patent. The mechanical means of overcoming the hindrance is the subject-matter of the patent; and these means are described, in the specifications, as a car suspended beneath the wire on wheels, one behind the other, by means of hangers which form a frame for the wheels; and, in the claim, as a freely moving car held below the wire on wheel-hangers. The discovery actually embodied in the patent, therefore, is not that oscillation, in line with the wire, is a hindrance to the propulsion of a car, but that a car hung rigidly under the wire, on two wheels upon the wire, one behind the other, will overcome such oscillation. The scope of the patentee's grant embraces, not every means of overcoming this apprehended oscillation, but only such as are set forth in the patent.

However the merits of the patentee's contribution might incline us, we have no power to enlarge his patent. Restricted to the limits already indicated, it cannot, by judicial interpretation, be made to cover the appellee's device. That device obviates oscillation, and procures rigidity, through mechanical means, different from the patent in suit.

As already stated, appellant's apparatus consists of a car suspended beneath a wire or way from two wheels running upon the wire, and at opposite ends of the frame, one behind the other, and cooperating equally in sustaining the weight. The frame is rigidly attached to the wheels, for the primary purpose of preventing oscillation, in the line of the car's travel.

In the appellees' apparatus the car is suspended beneath the wire or way by one wheel only, upon the wire, and near the middle of the car, which wheel alone sustains the weight. Beneath the wire, and at one end of the car, however, is a second wheel, which serves the purpose of preventing oscillation, in the line of the car's travel.

In appellant's apparatus the weight conveyed is between the wheels, and, since the two wheels cooperate equally in sustaining the load, either may be treated as the fulcrum, the other being, in turn, the motive power, and the preventive against oscillation; while in appellees' apparatus the weight is on one end of the frame, the

fulcrum is in the center, and the motive power, and the preventive against oscillation, at the other.

Appellant must employ a frame of sufficient length—for the primary purpose of preventing oscillation—to preclude the forward end of the frame from an upward movement, in response to the initial impulse. This length of frame depends, of course, in each instance, upon the approximate weight of the parcel to be carried. Any undue attempt to shorten the length of frame, thus throwing the wheels close together, would eliminate the advantage against oscillation gained from an appropriate length of frame.

The mechanical construction, on the contrary, of appellees' apparatus admits of a placing of the wheels as close to each other as may be desired. The one wheel being under the wire and the other above, rigidity—non-oscillation—is preserved, not by length of frame proportionate to the weight and impulse, but by the fact that the position of the wheels is such, that one counteracts the other. In our opinion there is no infringement.

The decree of the Circuit Court will be affirmed.